UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL HUBBARD, 205988,

     Petitioner,

v.

WILLIE SMITH,

     Respondent.

CASE NO. 13-14540

HON. DAVID M. LAWSON

MAG. PAUL J. KOMIVES

_____

**Answer in Opposition to Petition for Writ of Habeas Corpus**

**Introduction**

On January 17, 1992, Petitioner Carl Hubbard shot and killed 21-year-old Rodnell Penn in Detroit, Michigan.  Penn died from multiple gunshot wounds to the head and back, some of which were the result of close-range firing.  Curtis Collins saw Hubbard with Penn just before the killing and saw Hubbard flee the scene immediately after Collins heard gunshots.  Others also placed Hubbard near the scene of the murder, including a police officer who spoke with Hubbard and said that Hubbard expressed a "faked" look of shock when the officer told him the victim was dead.  There was also evidence that Penn sold drugs

for Hubbard, that Penn was a key witness in a previously dismissed murder charge against Hubbard, and that all of the recovered spent bullets were fired from the same weapon.  Hubbard's defense was alibi: Hubbard's friend testified that Hubbard was with him at the time of the murder.  After a bench trial in the Wayne County Circuit Court, the trial court convicted Hubbard of first-degree murder.  Hubbard was then sentenced to life in prison.

Hubbard commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following claims:

    I.    [Hubbard] has made a colorable claim of actual innocence which equitably tolls the AEDPA's one-year statute of limitation, overcomes any procedural bars applicable to any issues presented, permits an evidentiary hearing in this Court, and supports a freestanding claim of actual innocence.

    II.    [Hubbard's] conviction that was based on perjured testimony violated his Fourteenth Amendment due process rights.

    III.    [Hubbard] was denied his Fourteenth Amendment due process right to a fair trial where the prosecutor knowingly used perjured testimony to obtain this conviction.

    IV.    The due process clause of the Fourteenth Amendment was violated to the extent that the State failed to disclose agreements for Mr. Collins' favorable testimony.

2

V.    [Hubbard] was denied his Sixth and Fourteenth Amendment to the effective assistance of counsel where his trial counsel failed to:

    a) Investigate and call Roy Buford and Steve Konja to testify at trial

    b) Question Curtis[] Collins about his pending parole violation and whether he believed or only hoped that he would secure immunity or a lighter sentence, or any other favorable treatment from the prosecutor

    c) Move for the suppression of Mr. Collins' in-court identification of [Hubbard]

    d) Object to the admission of [Hubbard's] statements obtained in violation of the Fourth Amendment

    e) Do all of the above which, when considered cumulatively, demonstrate that [Hubbard] was prejudiced by counsel's errors

VI.    [Hubbard's] conviction should be reversed because the evidence presented at trial failed to prove guilt beyond a reasonable doubt.

VII.    The inconsistent verdict of the trial court violated the Fourteenth Amendment.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading.

The State now answers the petition and requests that it be denied. With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

3

### A.    Statute of Limitations

The State asserts that the claims raised by Hubbard are barred by the applicable statute of limitations as more fully discussed in Argument I below.

### B.    Exhaustion

While the State asserts that Hubbard has not exhausted all of his claims, because Hubbard no longer has a means by which to do so now, any such claims are procedurally defaulted, as more fully discussed below.

### C.    Procedural Default

The State asserts that Hubbard has procedurally defaulted some of his claims, as more fully discussed below.

### D.    Non-retroactivity Doctrine

Hubbard may not rely on rules of law that were recognized after his conviction became final.  The State is not arguing that any of Hubbard's claims are barred by the non-retroactivity doctrine.

## Statement of the Case

### A.    Trial Facts

In January 1992, Hubbard shot and killed Rodnell Penn.  Penn

died from multiple gunshot wounds to the head and back, some of which

were the result of close-range firing.  In analyzing Hubbard's

insufficient-evidence claim, the Michigan Court of Appeals set forth the

following adduced at trial as follows:

> A witness saw defendant with the victim just prior to the
> killing and observed him fleeing the scene immediately after
> the gunshots were heard.  No other person was seen in the
> immediate area.  This evidence was viewed together with the
> evidence that the victim was a key witness in an earlier
> dismissed murder charge against defendant, the evidence of
> defendant and the victim's involvement together in selling
> drugs was indicative of defendant's motive.

*People v. Hubbard*, No. 159160, (Mich. Ct. App. Dec. 19, 1995).  This

recitation of the facts is entitled to the presumption of correctness

under § 2254(e)(1), and Hubbard has not demonstrated through clear

and convincing evidence that this summary is incorrect.  The State

opposes any factual assertions made by Hubbard that are not directly

supported by or consistent with the state court record.

### B.    Procedural History

Hubbard's bench trial took place in the Wayne County Circuit Court before the Honorable Richard P. Hathaway. The trial took place on August 31, September 1, and September 2, 1992. After the trial court judge heard testimony and argument, Hubbard was convicted of first-degree murder but acquitted of felony firearm. (9/2/92 Tr. at 174-185.) Hubbard was later sentenced to life in prison.

Following his conviction and sentence, Hubbard filed a claim in the Michigan Court of Appeals. Hubbard also filed a motion to remand which, on September 8, 1993, was denied without prejudice for failure to submit and affidavit or offer of proof of facts in support of the issues. In his brief on appeal, Hubbard raised the following claims through counsel:

   I.    This case should be remanded for an evidentiary hearing on the issue of whether the recall of the People's witness Curtis Collins and his later trial testimony was the product of improper coercion by the prosecution and/or Detroit Police Department.

   II.   This case should be remanded for an evidentiary hearing on the issue of whether [Hubbard] was denied his constitutional right to effective assistance of counsel.

   III.  This case should be remanded for an evidentiary hearing on the issue of whether the warrantless arrest and delayed arraignment of [Hubbard] was a violation of constitutional

6

rights and whether his in-custody police statement should
have been excluded as evidence at trial.

IV.    Where the prosecution's case failed to set forth evidence
beyond a reasonable doubt as to each of the elements of the
offense, the lower court committed reversible error in
denying [Hubbard's] motion for a directed verdict.

V.    The lower court verdict should be reversed because the
evidence presented in the lower court bench trial failed to
prove [Hubbard's] guilt beyond a reasonable doubt.

VI.    [Hubbard's] bench trial conviction should be overturned
because the lower court's decision was not adequately
supported by findings and conclusions, and the trial judge's
decision amounted to an improper, inconsistent verdict.

The prosecutor filed an answer to Hubbard's brief on appeal.  Hubbard

then filed two pro per supplemental briefs, where he raised the

following questions:

I.    Did authorities/prosecution intimidate the witness into
uttering a statement and testifying at trial?

II.    Was the admission of the portions of witness testimony from
preliminary examination admissible?

III.    Was the impeachment of the witness proper?

IV.    Was similar act of uncharged crime admissible that lacked
supporting evidence?

V.    Did prosecution allow false testimony to go uncorrected?

VI.    Was the prior inconsistent statement admissible in the
improper rehabilitation of res gestae witness?

7

VII.   Did the trial court reversibly err in denying [Hubbard] his
state and federal constitutional right to trial by jury
proceeding to trial without a valid waiver of [Hubbard's]
right to trial by jury?

The Michigan Court of Appeals denied a later attempt by Hubbard to

file another supplemental brief and to permit addition to the record.  On

December 19, 1995, the Michigan Court of Appeals affirmed Hubbard's

conviction in an unpublished per curiam opinion.  *Hubbard*, No. 159160

(Mich. Ct. App. Dec. 19, 1995).

Hubbard then filed an application for leave to appeal in the

Michigan Supreme Court, where he appears to have raised the same

claims that he raised in the Michigan Court of Appeals, as well as new

claim alleging that his appellate counsel was ineffective for not abiding

by a state court rule which requires a motion for remand to be

accompanied by an affidavit.  The Michigan Supreme Court [denied the

application because it was not persuaded that the questions presented

should be reviewed by the Court.  *People v. Hubbard*, 554 N.W.2d 910

(Mich. 1996) (unpublished table decision).

In July 2007 and May 2008, Hubbard filed in the state trial court

a "motion to expand the record, or alternatively for an evidentiary

hearing in lieu of filing an MCR 6.500 motion." In these motions, Hubbard sought a hearing to place on the record any deal made between the prosecutor's office and witness Curtis Collins and to determine whether a "fraud" was perpetrated on the trial court by Collins' testimony that he did not get a deal by changing his earlier testimony against Hubbard. On March 18, 2009, the trial court denied Hubbard's motion to expand the record or for an evidentiary hearing. (3/18/09 Order Den. Def.'s Mot. to Expand the Record or for an Evidentiary Hr'g.)

In December 2011, Hubbard returned to the state trial court and filed a motion for relief from judgment, which contained the following claims:

I.     [Hubbard] is entitled to a new trial based on the newly discovered evidence presented to this Court.

II.    [Hubbard's] conviction that was based on perjured testimony violated his Fourteenth Amendment due process rights.

III.   [Hubbard] was denied his Fourteenth Amendment due process right to a fair trial where the prosecutor knowingly used perjured testimony to obtain this conviction.

IV.    The due process clause of the Fourteenth Amendment was violated to the extent that the State failed to disclose agreements for Mr. Collins' favorable testimony.

V.    [Hubbard] was denied his Sixth and Fourteenth Amendment to the effective assistance of counsel where his trial counsel failed to:

    a) Investigate and call Roy Buford and Steve Konja to testify at trial

    b) Question Curtis[] Collins about his pending parole violation and whether he believed or only hoped that he would secure immunity or a lighter sentence, or any other favorable treatment from the prosecutor

    c) Move for the suppression of Mr. Collins' in-court identification of [Hubbard]

    d) Do all of the above which, when considered cumulatively, demonstrate that [Hubbard] was prejudiced by counsel's errors

VI.   [Hubbard] is entitled to a new trial on the grounds that the verdict was against the great weight of the evidence.

VII.  The "good cause" requirement of MCR 6.508(D)(3)(a) should be waived where [Hubbard] has shown that he is actually innocent.

VIII. [Hubbard] was denied his Sixth and Fourteenth Amendment right to the effective assistance of appellate counsel which provides the "good causes" required by MCR 6.503(D)(3)(a).

The trial court denied Hubbard's motion for relief from judgment. (3/15/12 Op. and Order Den. Def.'s Mot. for Relief from J.)  The trial court later denied Hubbard's motion for reconsideration.  (5/31/12 Order Den. Def.'s Mot. for Recons.)

After the trial court denied the motion for relief from judgment, Hubbard filed an application for leave to appeal in the Michigan Court of Appeals.  The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  (5/7/13 Mich. Ct. App. Order.)  Hubbard applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Michigan Court Rule 6.508(D).  *People v. Hubbard*, 843 N.W.2d 130 (Mich. 2013) (unpublished table decision).

## Standard of Review Pursuant to AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state-court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). AEDPA "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). "The limitations imposed by AEDPA are several and significant." *Rice v. White*, 660 F.3d. 242, 250 (6th Cir. 2011). The requirements of AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

The Supreme Court has emphasized that federal courts must adhere to AEDPA's stringent and limiting standards, reversing no fewer than 22 appellate AEDPA decisions since 2010.  *See Burt v. Titlow,* 134 S. Ct. 10 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781 (2013); *Marshall v. Rodgers*, 133 S. Ct. 1446 (2013) (per curiam); *Johnson v. Williams*, 133 S. Ct. 1088 (2013); *Ryan v. Gonzales*, 133 S. Ct. 696 (2013); *Parker v. Matthews*, 132 S. Ct. 2148 (2012) (per curiam); *Coleman v. Johnson*, 132 S. Ct. 2060 (2012) (per curiam); *Howes v. Fields*, 132 S. Ct. 1181 (2012); *Hardy v. Cross*, 132 S. Ct. 490 (2011) (per curiam); *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (per curiam); *Cavazos v. Smith*, 132 S. Ct. 2 (2011) (per curiam); *Bobby v. Mitts*, 131 S. Ct. 1762 (2011) (per curiam); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam); *Swarthout v. Cooke*, 131 S. Ct. 859 (2011) (per curiam); *Premo v. Moore*, 131 S. Ct. 733 (2011); *Harrington v. Richter*, 131 S. Ct. 770, 781 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010); *Renico v. Lett*, 130 S. Ct. 1855 (2010); *Berghuis v. Smith*, 559 U.S. 314 (2010); *Thaler v. Haynes*, 559 U.S. 43 (2010) (per curiam); *Smith v. Spisak*, 558 U.S. 139 (2010); *McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C. § 2254(d). Habeas relief may not be granted to Hubbard under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Federal courts performing habeas review do not act as "super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). "The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure." *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal court's "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

14

AEDPA restricts the body of law a habeas court may consider.  By its terms AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  Because "[s]tate courts are not bound by the dictates of the lower federal courts," "a lower federal court's application of Supreme Court precedent is not inherently any more 'right' or 'correct' than that of state courts."  *Evans v. Thompson*, 518 F.3d 1, 8 (1st Cir. 2008).  "It is the Supreme Court, and the Supreme Court alone, that has the 'revising authority' to 'control [the state courts'] jarring and discordant judgments, and harmonize them into uniformity.'"  *Id.* at 8 n.3 (quoting *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 348 (1816)); *see also Thayer v. Haynes*, 559 U.S. 43, 49 (2010) ("[W]e hold that no decision of this Court clearly establishes the categorical rule on which the Court of Appeals appears to have relied.").  Thus, under AEDPA, if there is no "clearly established Federal law, as determined by the Supreme Court" that supports a habeas petitioner's legal argument, the argument must fail.  *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

As the Supreme Court explained in *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), "clearly established Federal law" referred to in §

2254(d)(1) includes Supreme Court decisions at the time of the state-court adjudication on the merits but does not include Supreme Court decisions issued after the state court merits decision but before the petitioner's conviction becomes final.  This is so because the purpose of federal collateral review is to uphold final state court judgments that were valid when entered, not as a "mechanism for the continuing reexamination of final judgments."  *Sawyer v. Smith*, 497 U.S. 227, 234 (1990).

The only federal law that can be clearly established under § 2254(d) is Supreme Court precedent interpreting the Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002).  Indeed, Supreme Court decisions not based on constitutional grounds, e.g., decisions based on the Court's supervisory powers, are "off the table as far as § 2254(d) is concerned." *Id.*  Moreover, "[c]learly established law" under 28 U.S.C. § 2254(d)(1) is "the *holdings*, as opposed to the dicta, of this Court's decisions." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1792 (2013) (quoting *Taylor*, 529 U.S. at 412 (2000)).  And merely distinguishing Supreme Court precedent is insufficient to establish the entitlement to habeas relief. *Lancaster*, 133 S. Ct. at 1792.

16

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Taylor*, 529 U.S. at 412-13.  A state court decision "involves an unreasonable application of clearly established Federal law" pursuant to § 2254(d)(1) if "'the state court identifies the correct governing legal principle from [the Supreme] Court decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Further, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Visciotti*, 537 U.S. at 24-25). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A federal habeas court "fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Deference must be given even in cases "where the state court's reasoning is flawed or abbreviated." *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). In habeas review, the federal courts look at the "result that the state court reached, not 'whether [its decision] [was] well reasoned.'" *Robinson v. Polk*, 438 F.3d 350, 358 (4th Cir. 2006) (quoting *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003)).

Moreover, "[u]nder *Johnson v. Williams* and *Richter*, it is clear that a bad reason does not necessarily mean that the ultimate result was an unreasonable application of established doctrine. A state court could write that it rejected a defendant's claim because Tarot cards

18

dictated that result, but its decision might nonetheless be a sound one. If a state court's rationale does not pass muster . . . , the only consequence is that further inquiry is necessary." *Brady v. Pfister*, 711 F.3d 818, 827 (7th Cir. 2013).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 131 S. Ct. at 786. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87; *accord Lancaster*, 133 S. Ct. at 1786-87.

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. Furthermore, the Court reiterated that the AEDPA requires federal habeas courts to review

19

state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 785-86 (quoting *Yarborough*, 541 U.S. at 664). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

When a federal claim has been presented to a state court, and the state court denies relief, a rebuttable presumption arises that the state court adjudicated the federal claim on its merits, irrespective of whether the court explicitly discusses the federal claim. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). Indeed, it is the result to which deference is owed, not the opinion expounding it. As explained in *Rashad v. Walsh*, 300 F.3d 27, 45 (1st Cir. 2002), "[i]t is not our function . . . to grade a state court opinion as if it were a law school examination." Even if "the state court clearly applied an incorrect standard," then we must nonetheless decide whether "it reached the correct outcome." *West v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008). A federal habeas court ultimately "review[s] for reasonableness the state

court's ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).

The Supreme Court has also consistently drawn a distinction between state court decisions applying a broad constitutional standard and those that apply a narrow rule. As explained in *Yarborough v. Alvarado*, where a general standard is at issue, state court decisions are given greater leeway:

> If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough*, 541 U.S. at 664; *accord Renico v. Lett*, 130 S. Ct. 1855, 1864 (2010). Open-ended standards give states wide berth on habeas review. *Richter*, 131 S. Ct. at 786. Thus, in *Knowles v. Mirzayance*, 556 U.S. 111, 114 (2009), the Court held that ineffective-assistance-of-counsel claims must be given extra latitude in light of the general nature of the rule: "[B]ecause the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

Furthermore, with respect to § 2254(d)(2), a determination of a factual issue made by the state courts shall be presumed correct and may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74. Facts found by a state appellate court enjoy the same presumption. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000) ("[A]n implicit finding of fact is tantamount to an express one, such that deference is due to either determination." *Id.* at 286 (citing *Parke v. Raley*, 506 U.S. 20, 35 (1992))). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (noting that even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination"). And, as explained in *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007), a state court's resolution of an issue in the petitioner's favor is not entitled to deference under AEDPA because the "standard of review is a precondition to the grant of habeas relief . . . not an entitlement to it."

Lastly, the Supreme Court has held that "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster*, 131 S. Ct. at 1399. Therefore, review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398.

If the state court adjudicated any of Hubbard's claims on the merits, this Court must deny any attempt by Hubbard to supplement the state court record, whether through an evidentiary hearing,

23

discovery, or the presentation of new evidence in light of United States Supreme Court precedent. *Pinholster*, 131 S. Ct. 1388 (2011); *accord Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013) ("While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* preclude it.").

If any of Hubbard's claims were procedurally defaulted or otherwise not adjudicated on the merits, he has not demonstrated entitlement to a federal evidentiary hearing because the petition may be denied based on the existing record. *See* 28 U.S.C. § 2254(e)(2). *See also Pinholster*, 131 S. Ct. at 1398 (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). In *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the United States Supreme Court held that "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." The Court held that "[i]t follows that if the record refutes

24

the applicant's factual allegations or otherwise precludes habeas relief,

a district court is not required to hold an evidentiary hearing."  *Id.*

## Argument

**I.  A State prisoner challenging his conviction must file his habeas petition within one year of the conclusion of direct review or the expiration of time for seeking direct review. Here, Hubbard's petition was untimely and he has failed to demonstrate that extraordinary circumstances justify equitable tolling.  The petition should be dismissed as untimely.**

At the outset, this Court should dismiss the habeas petition as untimely.  AEDPA provides for a one-year statute of limitations after finalization of direct review:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> (A)   the date on which the judgment became final by the conclusion of direct review of the expiration of time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was originally recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

AEDPA governs the filing date for habeas petitions filed after AEDPA's effective date of April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The statute of limitations is tolled statutorily by a properly filed motion for post-conviction review or is equitably tolled by the court under limited circumstances.  28 U.S.C § 2244(d)(2).

Where a petitioner appeals to the Michigan Supreme Court, but does not petition the United States Supreme Court for a writ of certiorari, his judgment of conviction is finalized when the time for taking an appeal to the United States Supreme Court expires.  That time is 90 days after the Michigan Supreme Court's decision.  Sup. Ct. R. 13.  The one-year habeas statute of limitations commences running at that time.  *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

A petitioner may challenge the validity of the judgment of conviction by filing a motion for relief from judgment under the terms in subchapter 6.500 of the Michigan Court Rules.  A properly filed application for post-conviction or other collateral review tolls the running of the one-year habeas statute during the pendency of that application.  But tolling is effective only when collateral review is

27

properly sought within the limitations period.  This means a petitioner must file the proper documents pleading available grounds for relief within the proper time.  "And an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

When the habeas statute of limitations has already expired, a motion for relief from judgment "does not reset the date from which the one-year statute of limitations begins to run." *Johnson v. Hendricks*, 314 F.3d 159, 161-62 (3d Cir. 2002); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Neal v. Bock*, 137 F. Supp. 2d 879, 884 (E.D. Mich. 2001).  This is because there is no remaining period to be tolled.  *Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D. Mich. 2001).

After completion of state court collateral review, the statute of limitations is not tolled during the pendency of a certiorari petition in the United States Supreme Court seeking review of the denial of state post-conviction relief.  *Lawrence v. Florida*, 549 U.S. 327, 329 (2007).

28

The Supreme Court has held that the habeas statute of limitations is subject to equitable tolling. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010). Equitable tolling is available in habeas challenges to state court convictions only when a litigant can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way . . . .'" *Holland*, 130 S. Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *accord Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (holding that *Holland* replaced the 5-part inquiry of *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001)).

In order to establish entitlement to equitable tolling, the petitioner bears the burden of demonstrating both *Holland* factors. *Hall*, 662 F.3d at 750; *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). Moreover, equitable tolling should only be granted "sparingly." *Robertson*, 624 F.3d at 784 (citations omitted). Ignorance of the law, illiteracy, and lack of legal assistance do not amount to grounds for equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling.") (internal quotation marks and citation omitted); *Cobas v.*

*Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("[I]nmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations."); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (Lack of "professional legal assistance [is] not an extraordinary circumstance which would toll the statute of limitations."); *accord Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling).

In *McQuiggin v. Perkins*, 133 S. Ct 1924 (2013), the Supreme Court addressed actual innocence as a basis for equitably tolling the limitations period, and concluded that AEDPA's statute of limitations may be overcome by a showing of actual innocence. *Perkins*, 133 S. Ct. at 1930. Specifically, the Supreme Court found that the miscarriage of justice/actual innocence exception "survived AEDPA's passage intact and unrestricted." *Perkins*, 133 S. Ct. at 1934. But the Supreme Court said that the "miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Perkins*, 133 S. Ct. at 1933. This is consistent with the

30

Sixth Circuit's finding which held that the limitations period could be equitably tolled based on a habeas petitioner's credible claim of actual innocence. *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). The *Souter* Court, relying on *Schlup v. Delo*, 513 U.S. 298 (1995), stated that:

> [W]here an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims.

*Souter*, 395 F.3d at 602.

But to avail himself of that rule, a petitioner must establish actual innocence under the stringent rule of *Schlup*. The petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *and* that shows that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 324) (internal quotation marks omitted). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Souter*, 395 F.3d at 590 (quoting *Bousley v. United*

*States*, 523 U.S. 614, 623 (1998)).  Also, the Sixth Circuit in *Souter* recognized the Supreme Court's admonition that "the actual innocence exception should 'remain rare' and 'only be applied in the "extraordinary case.""  *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

Hubbard's petition was not filed within the one-year statute of limitations, and Hubbard is not entitled to equitable tolling.  In this case, the expiration of time for seeking direct review under 28 U.S.C. § 2244(d)(1)(A) was January 26, 1997—90 days after the Michigan Supreme Court denied Hubbard's delayed application for leave to appeal on October 28, 1996.  Since this date is after the enactment of AEDPA, the period of limitations began running the next day, January 27, 1997.  Hubbard then had one year, until January 27, 1998, within which to file his petition, or to instead properly file an application for state post-conviction or other collateral review, which would toll the one-year statute of limitations period.  Hubbard filed his motion for relief from judgment in late December 2011—nearly fourteen years *after* the limitations period had already expired.  Hubbard's untimely motion did not toll or restart the running of the statute of limitations.

Hubbard does not allege nor can he show that § 2244(d)(1)(B) or

(C) should apply in his case.  To the extent that he may attempt to rely

on § 2244(d)(1)(D) to trigger the running of the limitations period, such

an argument should fail.  Under § 2244 (d)(1)(D), a habeas petition may

be filed within one year from "the date on which the factual predicate of

the claim or claims presented could have been discovered through the

exercise of due diligence."  Under § 2244(d)(1)(D), the time commences

when the factual predicate for a habeas petitioner's claim could have

been discovered through the exercise of due diligence, not when it was

actually discovered by a petitioner.  Moreover, the time under AEDPA's

limitations period begins to run pursuant to § 2244(d)(1)(D) when a

habeas petitioner knows, or though due diligence, could have

discovered, the important facts for his claims, not when the petitioner

recognizes the facts' legal significance.  § 2244(d)(1)(D) does not convey

a right to an extended delay while a petitioner gathers every possible

scrap of evidence that might support his claim.  *Redmond v. Jackson*,

295 F. Supp. 2d 767, 771 (E.D. Mich. 2003).  A habeas petitioner has the

burden of showing that he exercised due diligence in search for the

factual predicate of the habeas claims.  *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002).

Hubbard's purportedly new evidence consists of affidavits from various individuals, most of them prisoners.  These affidavits fall into two categories: (1) individuals who saw another individual shoot the victim or said that the word on the street was that this individual killed the victim, and (2) individuals who say prosecution witness Curtis Collins was coerced when he testified on the third day of trial.  Below is a summary of the affidavits that Hubbard attaches to his petition:

- 2/1/11  *Affidavit from prisoner Askia Hill*

    Hill essentially asserts that he saw Mark Goings shoot the victim on January 17, 1992 and that he never told anyone because he feared for his life.  Hill says that he did not know Hubbard but had seen him in the neighborhood; according to Hill, Hubbard was not the man who shot the victim.

- 9/8/11  *Affidavit from prisoner Roy Burford*

    Burford asserts that he was at the "Special K" party store on January 17, 1992 from 6:00 p.m. until closing and that at one point the store owner called police.  Burford says that he saw neither Curtis Collins nor Carl Hubbard that night in the store or near the vicinity, that Collins told Burford that he "lied on" Hubbard because Hubbard had robbed Collins in 1986, and that after Hubbard was convicted, everyone was saying that Mark Goings was the one who killed Penn.

34

- 6/25/09  *Affidavit from prisoner Emanuel Randall*

	Randall asserts that Collins was not in the vicinity of the murder on January 17, 1992, and that Collins was with him and Raymond Williams playing a dice game when they got a call that someone had been killed. Randall also says that the "word on the street" was that Mark Going killed Penn because Going believed that Penn had killed Going's brother Dearl a few weeks earlier.  Randall also said that no one could understand why Collins would lie on Hubbard.

- 5/23/11  *Affidavit from Raymond Williams*

	Williams asserts that while being held at the Detroit Police Homicide Section between 8/31/92 and 9/2/92, he heard Collins crying in his nearby cell.  When Williams asked Collins what was wrong, Collins replied that police officers Joann Kenny and Ronald Gale made him lie on Hubbard at Hubbard's 9/2/92 trial.  Williams told Collins to not lie because he and Collins knew they weren't near the crime scene that night.  Collins replied that if he didn't lie the police would charge him with the murder.  Williams said he never told anyone about what Collins told him while in lockup until he (Williams) got in touch with Hubbard in late-2010 and 2011.

- 1/9/12  *Second Affidavit from Raymond Williams*

	Williams in this affidavit asserts that on 10/2/11, he discussed the case with the Special K party store owner, Steve Konja, and that Konja told Williams that never saw Collins in the store on January 17, 1992.

- 1/28/04  *Affidavit from prisoner Elton Carter*

> Carter asserts that Collins told him that his 9/2/92 trial testimony was coerced and that police threatened to charge him in the case if he did not agree to so testify.  Carter also asserts that Collins told him that he wasn't at the scene of the crime.  According to Carter, Collins revealed this information after Hubbard was found guilty.  Interestingly, there are two dates on this affidavit: 1/28/04 and 1/2/08.

Hubbard also provides his own unsworn "declaration," dated October 22, 2013, where he asserts that:

- He was unaware of the contents of Hill's affidavit until January 2011, when they had a chance encounter while incarcerated.

- He was unaware of the contents of Burford's affidavit until August 2011, when they had a chance encounter while incarcerated, and in October 2011, when Burford talked to Steve Konja.

- He was unaware of the contents of Randall's affidavit until June 2009, when they had a chance encounter while incarcerated.

- He was unaware of the contents of Carter's affidavit until January 2004, when Carter wrote Hubbard while Hubbard was incarcerated.

- It was only through further conversation with Raymond Williams that Hubbard was able to get Williams' second affidavit.

At the outset, Hubbard was aware of Raymond Williams at the time of his trial in 1992; trial counsel had, after all, called Williams to

36

testify.  (9/2/92 Tr. at 101-111.)  Thus, anything in Williams' affidavits could have been discovered earlier and Hubbard has failed to show that it could not have been.  Randall's claim that Collins was with him and Raymond Williams on the night of the murder also could have been discovered earlier.  As noted above, Williams testified at trial.  Hubbard has also failed to establish that he has been pursuing his rights diligently.  Hubbard became aware of Carter's statements in January 2004, Randall's statements in June 2009, Hill's statements in January 2011, and Burford's statements in August 2011.  Yet Hubbard did not file his motion for relief from judgment until December 28, 2011.  When Hill purportedly told him that someone else committed the killing, Hubbard waited nearly a year before filing his motion for relief from judgment.  In the end, Hubbard could with due diligence have discovered the factual predicate for his claims earlier and he has failed to show that he diligently pursued his rights.

To the extent that Hubbard alleges that he is entitled to equitable tolling because he is actually innocent, Hubbard's claim should fail because his proffered evidence does not meet the exacting standard to support a credible claim of actual innocence outlined in *Souter*.  Even if

37

the affidavits that he attaches are characterized as "new," they may not be characterized as new *credible* evidence.  It indeed is not "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. That it took Hill over 18 years to come forward with his information about another man purportedly killing Penn should seriously detract from his credibility.  The same is true with respect to the statements made by the other men.  For instances, why it took Randall almost 17 years to say that he, too, was with Curtis Collins and Raymond Williams playing dice on the night of the murder is questionable, given that Williams testified to this at trial.  The same is true with respect to why it took Williams so long to get in touch with Hubbard or the party store owner, and why it took Burford and Carter so long to reveal the information they had.  Also, Williams, in his affidavit, claims that Collins told him that police were "making him lie" against Hubbard and threatening to charge Collins with murder.  Yet at trial, Williams absolutely makes no mention of this.  And as noted above, Williams waited until 2010-to-2011 to contact Hubbard about this.

The majority of the affidavits that Hubbard provides are from current or former prisoners: Hill is serving lengthy sentences for carjacking and assault with intent to murder; Burford is in prison for second-degree murder, prisoner possessing weapons, and felony firearm; Randall is in prison for several serious drug offenses; and it appears that Carter has previously absconded from probation.  (This information is from the Michigan Department of Corrections Offender Tracking Information System—or OTIS.)  This could provide another reason to discount their credibility.  See e.g. *Milton v. Secretary, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (affidavits from fellow inmates and family members created after trial are not sufficiently reliable evidence to support a claim of actual innocence); *Torres v. Graham*, No. 06-CV-508, 2009 WL 4730313, *4 n. 8 (W.D.N.Y. Dec. 5, 2009) (finding that affidavits from fellow inmates who were supposedly present at the shooting and alleged that petitioner was not the shooter were unreliable).

All in all, the affidavits and his own un-notarized statement that Hubbard now presents are not credible or the type of new reliable evidence which shows that it is more likely than not that no reasonable

juror would have found Hubbard guilty beyond a reasonable doubt.
Even if they are characterized as "new," they are not new *credible*
evidence, and surely not "exculpatory scientific evidence, trustworthy
eyewitness accounts, or critical physical evidence—that was not
presented at trial." *Schlup*, 513 U.S. at 324.  Unlike the "rare" and
"extraordinary" circumstances in *Souter*, Hubbard has not made a
credible showing of actual innocence.  His evidence does not provide
reliable support for his claim of actual innocence and is insufficient to
equitably toll the limitations period.

To the extent that Hubbard is raising a freestanding claim of
actual innocence, such a claim is not cognizable on federal habeas
review.  In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme
Court held that claims of actual innocence based on newly discovered
evidence fail to state a claim for federal habeas relief absent an
independent constitutional violation occurring in the underlying state
criminal proceeding.  Federal habeas courts sit to ensure that
individuals are not imprisoned in violation of the constitution, not to
correct errors of fact.  *Id., See also Hence v. Smith*, 37 F. Supp. 2d 970,
980 (E.D. Mich. 1999).  Freestanding claims of actual innocence are not

40

cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases). The Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006), did not change this, as in that case the Supreme Court again declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," *id.* (quoting *Herrera*, 506 U.S. at 417), the Supreme Court declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context.

## II.   Habeas relief is not warranted on Hubbard's second-through-fourth claims alleging perjured testimony and prosecutorial misconduct.

In his second claim, Hubbard asserts that he was denied a fair trial when Collins purportedly gave perjured testimony on the third day of trial, namely, about Hubbard's involvement in the murder.  Hubbard asserts that Collins failed to reveal that he was "coerced by homicide detectives" to implicate Hubbard in the murder.  In his third claim, Hubbard asserts that the prosecutor knowingly used perjured testimony to convict him.  In his fourth claim, Hubbard, citing to *Brady v. Maryland*, 373 U.S. 83 (1963), asserts that he was denied a fair trial by the State's failure to disclose "agreements" that were made in exchange for Collins' favorable testimony, specifically, an agreement as to Collins' parole violation and an agreement to not charge Collins with the murder of the victim.  None of Hubbard's claims warrant habeas relief.

At the outset, Hubbard's fourth claim, alleging a *Brady* violation, does not appear to have been raised until his motion for relief from judgment, which the state trial court denied, citing in part to Mich. Ct. R. 6.508(D)(3).  This claim thus appears to be procedurally defaulted. "[P]rocedural default results where three elements are satisfied:  (1) the

petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). In this case, the last state court to issue a reasoned opinion on Hubbard's *Brady* claim was state trial court which denied relief based in part on Mich. Ct. R. 6.508(D)(3). This reason for denying relief constitutes a procedural default.

A state prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g., Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680,

690-91 (6th Cir. 2007).  A petitioner must present a substantial reason to excuse the default.  *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see also Amadeo v. Zant*, 486 U.S. 214, 222-23 (1988) (reviewing a claim that a document was concealed by officials).  One recognized reason includes attorney error rising to the level of ineffective assistance of counsel.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).  Stated differently, attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland.*  An appellate attorney need not raise every nonfrivolous argument on appeal, *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-752).  "Generally, only

44

when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal.

To the extent that Hubbard asserted that appellate counsel was ineffective for failing to raise the *Brady* claim, this claim lacks merit. Indeed, appellate counsel raised various claims on direct appeal and Hubbard has not shown that the claim he alleges appellate counsel should have presented was clearly stronger than the claims that appellate counsel did present.  Hubbard has failed to overcome the strong presumption that his appellate counsel was competent, and he cannot show the requisite prejudice because the claim is not meritorious, as noted below.

Hubbard also cannot show that failure to review his claims would result in a fundamental miscarriage of justice.  The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the

45

conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496.  For reasons set forth in Argument I, Hubbard has not presented any new, reliable evidence in support of a claim of actual innocence.  Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Hubbard's defaulted claim.

Hubbard's underlying *Brady* claim also does not warrant habeas relief.  It is well-settled that there is no general constitutional right to discovery in a criminal case.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).  The Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In other words, *Brady* requires the prosecution to disclose exculpatory and impeachment evidence that is "material either to guilt or to punishment."  *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87).  "The evidence is material only if there is a reasonable probability that, had the evidence

46

been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  A *Brady* violation has three elements: (1) the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the state, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler*, 527 U.S. at 281-282.  No *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source.  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (internal citations and quotations omitted).

The petitioner bears the burden of establishing each of the three elements set forth above.  *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000).  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet…."  *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011) (quoting *Jamison*, 291 F.3d at 388).  To establish prejudice "the nondisclosure [must be] so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."

*Id.* (quoting *Strickler*, 527 U.S. at 281).  "[T]he *Brady* standard is not met if the petitioner shows merely a reasonable *possibility* that the suppressed evidence might have produced a different outcome; rather, a reasonable *probability* is required."  *Id.* (emphasis in original).  A reviewing court must consider the totality of the evidence when evaluating a claim of error for its prejudicial effect.  *Id.* at 679.

The trouble with Hubbard's *Brady* claim is that he has never established that any "agreement" between the prosecutor or police and Collins existed.  Hubbard speculates that there was an agreement to drop the perjury charge in exchange for his testimony on 9/2/92 but there is no evidence that any such agreement ever existed—and Collins denied that any such agreement existed.  (9/2/92 Tr. at 50-51.)  Hubbard also speculates that there were "agreements" between the prosecutor and Collins regarding Collins' parole violation and to not charge Collins with murder but there is no evidence of such agreements.  Trial counsel does not reference any such "agreements" in his affidavit; rather, trial counsel says only that "[t]o the best of [his] information and belief, Mr. Collins was released and not charged when he changed his testimony the following day."  Trial counsel's "charged" reference is presumably to

48

perjury, which is what Collins was arrested for.  The fact that Collins

was ultimately not charged with perjury does not mean that he and the

prosecutor's office had an agreement to that effect before Collins

testified on the third day of trial.  In sum, Hubbard has never

established that any agreements between the prosecutor and Collins

existed.  Thus, his *Brady* claim should fail.

Habeas relief is also not warranted on Hubbard's second claim,

alleging that Collins gave false testimony, and his third claim, alleging

that the prosecutor knowingly used perjured testimony to convict him.

These claims are related.  Hubbard on direct appeal argued that the

prosecutor knowingly presented Collins' false testimony or knowingly

allowed Collins' false testimony to stand uncorrected.  Before

addressing Hubbard's claim of prosecutorial misconduct, the Michigan

Court of Appeals, in addressing Hubbard's request for an evidentiary

hearing on whether Collins' 9/2/92 testimony was coerced, summarized

what occurred at trial.  Indeed, Collins testified twice at trial: first on

August 31, 1992, and then on September 2, 1992.  The Michigan Court

of Appeals summarized that occurred at trial as follows:

> At trial, the prosecutor's key witness, Curtis Collins,
> denied being at the party store at Gray Street and Mack

49

Avenue, near where the victim's body was found.  Collins also testified that he did not see defendant near the time that the victim was killed.  The prosecutor responded to this testimony with Collins' preliminary examination testimony.

During the preliminary examination, Collins testified that he was in the party store and saw both defendant and the victim in the store.  Collins left the store before the defendant and the victim, and when Collins was a short distance outside of the store he heard gunshots.  Collins turned and saw defendant standing near the victim's body, and then he observed defendant running away from the scene.

When asked why his trial testimony differed from that at the preliminary examination, Collins indicated that he had been pressured by authorities to give certain testimony at the preliminary examination.  Collins was on escape status for removing a tether, and testified at trial that the police told him that they would ensure that he would receive a maximum sentence for being an escapee if he did not testify as they wanted.  According to Collins, the preliminary examination testimony was untrue and he was not at the scene when the shooting occurred.

After testifying at trial, Collins was arrested for perjury.  Two days later, he was recalled as a witness.  At this time, Collins indicated that his earlier trial testimony had been a lie and his preliminary examination testimony was a truthful rendition of the facts.  He testified that he lied in court at trial because he had received threats on his life regarding his testimony identifying defendant.  Collins testified that he did not change his trial testimony because he had been arrested, but that he wished to tell the truth.  He believed that he would still be charged with perjury after he left the court.

50

*Hubbard*, No. 159160 (Mich. Ct. App. Dec. 19, 1995.)  The Michigan

Court of Appeals' summary is supported by the record (8/31/95 Tr. at

16-58; 9/2/92 Tr. at 37-92), and presumed correct.  After finding that

Hubbard failed to provide any factual support for his claim that the

Collins' testimony on 9/2/92 was coerced, the Michigan Court of Appeals

denied Hubbard's presentation-of-false-testimony claim:

> Defendant further argues that the prosecution knowingly presented Collins' false testimony or allowed that false testimony to stand uncorrected.  Even if a prosecutor has not solicited false testimony, if it presented [sic] and is allowed to stand uncorrected, a defendant's right to due process is offended.  *Carter, supra* at 568.  Where there is a reasonable likelihood that false testimony affected the verdict, failure to correct it requires reversal.  *Id.*  In this case, although defendant presented inconsistencies in Collins' testimony and conflict with the testimony of defendant's witnesses, defendant has provided no evidence that Collins' testimony was false.  Although Collins changed his testimony, there was no suggestion that the prosecutor was aware that Collins would change his story before he testified.  Because there is no evidence supporting defendant's claim, we find no error.

*Hubbard*, No. 159160 (Mich. Ct. App. Dec. 19, 1995.)

In his post-conviction motion, filed before his motion for relief

from judgment, Hubbard sought a hearing to place on the record any

deal made between the prosecutor's office and Collins and to determine

whether a "fraud" was perpetrated on the trial court by Collins'

testimony that he did not get a deal by changing his earlier testimony against Hubbard.  Hubbard submitted an affidavit from trial counsel, dated June 15, 2000, essentially saying that Collins was not charged with perjury after he changed the trial testimony that he gave on the first day of trial.  In denying Hubbard's motions, the trial court found no merit to Hubbard's arguments.  (3/18/09 Order Den. Def.'s Mot. to Expand the Record or for an Evidentiary Hr'g.)

Prosecutors may not knowingly use perjured testimony, *Giglio v. United States*, 405 U.S. 150, 153 (1972), nor allow false evidence or testimony to go uncorrected, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted).  To prevail on a claim that a conviction was obtained with false evidence, the petitioner must show that the statements in question were actually false, that the statements were material, and that the prosecutor knew they were false.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  A misleading statement will not satisfy that burden.  Instead, a habeas petitioner must show that a witness's statement was "indisputably false."  Byrd v. Collins, 209 F.3d 486, 517 (6th Cir. 2000).

In the present case, Hubbard has presented only his conclusory allegations that Collins' testimony on the third day of trial was perjured, that there were "agreements" between the prosecutor and Collins that were not revealed, and that the prosecutor knowingly presented or allowed to stand Collins' purportedly false testimony that he was not promised anything when he testified on 9/2/92.  But conclusory allegations without any evidentiary support do not provide a basis for habeas relief.  *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief).  Hubbard has presented no evidence that Collins' testimony on 9/2/92 was false.  "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony."  *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir.1991); see also *United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir. 1978) ("Presentation of a witness who recants or contradicts his

prior testimony is not to be confused with eliciting perjury.").  Collins in the instant case explained why he testified differently on 9/2/92 than he did no 8/31/92.  Hubbard also has not established that any explicit or implicit promises were made to Collins before he took the stand on third day of trial.  As such, there was no duty on the prosecutor to disclose anything or to correct Collins' testimony.  And even if Collins had an expectation of some sort of leniency, neither *Giglio* nor *Napue* stand for the proposition that a witness' mere "expectation of leniency" must be disclosed absent evidence of an express or implied promise of leniency.  See e.g., *Mastrian v. McManus*, 554 F.2d 813, 823 (8th Cir. 1977).  In the end, Hubbard has not shown that Collins' statements were actually false and that the prosecutor knew they were false.  Because Hubbard cannot show that the state court's ruling was contrary to or an unreasonable application of clearly established Supreme Court law, habeas relief is not warranted on his second and third habeas claims.

### III.   Habeas relief is not warranted on any of Hubbard's claims of ineffective assistance of counsel.

In his fifth claim, Hubbard asserts that trial counsel was ineffective for failing to: (a) investigate and call Roy Burford and Steve Konja to testify at trial, (b) question Collins about his pending parole violation and whether he believed or only hoped that he would secure immunity or a lighter sentence, or any other favorable treatment from the prosecutor, (c) move for the suppression of Collins' in-court identification of Hubbard, (d) object to the admission of Hubbard's statements obtained in violation of the Fourth Amendment, and (e) do all of the above which, when considered cumulatively, show that Hubbard was prejudiced by counsel's errors.  Notably, in making its ruling, the state trial court judge commented that trial counsel did an "excellent job" in representing Hubbard.  (9/2/92 Tr. at 184.)  None of Hubbard's claims of ineffective assistance of counsel warrant relief.

According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).  In other words, "under de novo review, the standard for judging counsel's representation is a most deferential one." *Harrington v.*

*Richter*, 131 S. Ct. 770, 788 (2011).  To show constitutionally ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that he was prejudiced.  *Strickland*, 466 U.S. at 687-688.  Regarding the first prong, judicial scrutiny of counsel's performance must be "highly deferential" and a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  It is "[r]are" that constitutionally competent representation will require "any one technique or approach."  *Pinholster*, 131 S. Ct. at 1407 (citing *Richter*, 131 S. Ct. at 789).  As to the second prong, *Strickland's* test for prejudice is "a demanding one."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011).  The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 131 S. Ct. at 792.  While surmounting *Strickland's* high bar is never an easy task, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.

On direct appeal, Hubbard raised various claims of ineffective assistance of counsel including the claim that trial counsel was ineffective for not objecting to the admissibility of his statement, which Hubbard asserts was obtained in violation of the Fourth Amendment. The Michigan Court of Appeals denied relief, finding that the issue was not preserved for appeal, that counsel had stipulated to the statement's admissibility, and that Hubbard failed to present facts or offer proof to demonstrate that his exculpatory statement was unconstitutionally obtained.

To the extent that the Michigan Court of Appeals found that the issue was not preserved for appeal the claim is procedurally defaulted because Hubbard failed to comply with a state procedural rule that requires defendants to contemporaneously object at trial.  This reason for denying relief constitutes a procedural default.  As noted above where a habeas petitioner has procedurally defaulted his claims he may escape the consequences of the default by showing cause and actual prejudice, or that failure to review the claims will result in a fundamental miscarriage of justice.  Hubbard argues that deficient trial counsel was the cause for his default but, even so, Hubbard cannot show

actual prejudice because his defaulted claim is without merit, as noted below.  Nor can Hubbard show that failure to consider his defaulted claim would result in a fundamental miscarriage of justice, as noted in Argument I.  Review of Hubbard's defaulted claim should therefore be precluded.

Hubbard's underlying claim was also waived.  Waiver is an "intentional relinquishment or abandonment of a known right." *People v. Riley*, 465 Mich. 442, 449 (2001) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).  "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-734).  Extinguishment of error through waiver was well established under state and federal law at the time Hubbard was tried.  The record shows that the admission of Hubbard's exculpatory statement was stipulated to by parties.  Hubbard also specifically said he agreed with his trial counsel on this point.  (9/1/92 Tr. at 62-63.)  Under these circumstances, Hubbard waived any claim of error involving the admission of his statement to police.

Hubbard's underlying claim also lacks merit, as the Michigan Court of Appeals' reasonably determined that Hubbard failed to present any facts or offer of proof to show that his exculpatory statement was unconstitutionally obtained.  Where Hubbard cannot show that the Michigan Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent or the fact, or that his federal constitutional rights were violated, habeas relief should be denied.

The other claims of ineffective assistance that Hubbard raises in his habeas petition appear to have been raised for the first time in his motion for relief from judgment.  At the outset, and to the extent that the state trial court relied on Mich. Ct. R. 6.508(D)(3), to deny relief, Hubbard's claims are procedurally defaulted.  See Argument II.  And Hubbard ultimately cannot demonstrate good cause and actual prejudice to excuse his default, or that failure to review his claims would result in a fundamental miscarriage of justice.  But even if Hubbard's underlying claims are considered they do not warrant the extraordinary remedy of habeas relief.

Hubbard claims that trial counsel was deficient for not calling Roy Burford and "Special K" party store owner Steve Konja to testify at

trial.  But trial counsel reasonably may have decided to focus on the

alibi defense and call witnesses who testified that Hubbard was with

them during the relevant time period.  Further, Andrew Smith testified

that he never saw Collins in the party store.  (9/1/92 Tr. at 47-49.)

Thus, any such testimony from Burford would have been cumulative on

this point.  Notably, Hubbard provides no affidavit from store owner

Konja indicating that he would have testified on Hubbard's behalf or

setting forth exactly what he would have testified to.  Rather, he

provides a long-delayed hearsay statement from Raymond Williams,

who says that Konja told him that he (Konja) did not see Collins in the

party store on January 17, 1992 and would testify to such if

subpoenaed.  Hubbard has failed to show either that trial counsel was

deficient or that any deficiency prejudiced him, let alone both, with

respect to not calling Burford and Konja.

Hubbard also asserts that trial counsel was deficient for not

questioning Collins about Collins' pending parole violation and whether

Collins believed or hoped that he would secure immunity or a lighter

sentence, or any other favorable treatment from the prosecutor.  But

counsel did extensively cross-examine Collins on the third day of trial,

when Collins was recalled by the prosecutor and said that his earlier trial testimony was a lie.  Trial counsel questioned Collins not only about whether police had made him any promises to return to court, but also about inconsistencies between his testimony at trial, the preliminary examination, and his statement to police.  (9/2/92 Tr. at 46-78, 83-92.)  Hubbard claims that trial counsel failed to bring out the "deal" that Collins had with respect to his parole violation but Hubbard has not established that such a "deal" ever existed.  In the end, that trial counsel did not specifically asked Collins about any pending parole violation was neither constitutionally deficient nor did it result in the requisite prejudice.

Hubbard asserts that trial counsel should have moved to suppress Collins' in-court identification of Hubbard.  But Hubbard has failed to show that any pretrial identification was unduly suggestive.  Given that any pretrial identification was not unduly suggestive any objection to it would have been futile.  But even if the procedure was unduly suggestive—a point the State in no way concedes—trial counsel may reasonably have thought the, under the totality of the circumstances, the trial court would have found Collins' identification nonetheless

reliable and allowed it.  Collins had, after all, known Hubbard and had known him for a long time.  (2/4/92 Tr. at 24) Collins identified Hubbard as the individual running away from the scene because he knew Hubbard and had seen him earlier in the party store.  Collins also identified Hubbard by the scar on his head (2/4/92 Tr. at 28; 9/2/92 Tr. at 66), which the trial court took judicial notice of.  (9/2/92 Tr. at 96.) Hubbard has failed to show deficient performance or the requisite prejudice, let alone both, by trial counsel's failure to move to suppress Collins' identification of Hubbard.

Finally, Hubbard claims that the cumulative effect of trial counsel's purported errors prejudiced him.  But for reasons set forth above, the State contends that Hubbard has failed to demonstrate any underlying constitutional violations.  Further, the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  And in this Circuit, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable on habeas review.  *Sheppard v. Bagley*, 657 F.3d 338, 348

(6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.

2005).  Thus, Hubbard is not entitled to relief on this claim.

## IV. Habeas relief is not warranted on Hubbard's insufficient-evidence claim because the state court's ruling on this issue was not objectively unreasonable.

In his sixth claim, Hubbard asserts that there was insufficient evidence presented at trial upon which to convict him of first-degree murder. Hubbard raised this claim on direct appeal but the Michigan Court of Appeals, denied relief, finding sufficient evidence to support Hubbard's conviction:

> To review a claim of insufficiency of the evidence, this Court must consider the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have concluded that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hurst*, 205 Mich App 634, 640; 517 NW2d 858 (1994). The crime of first degree murder requires proof of an intentional killing with premeditation and deliberation. *People v Saunders*, 189 Mich App 494, 496; 473 NW2d 755 (1991). Premeditation and deliberation may be inferred from the circumstances. *People v Buck*, 197 Mich App 404, 410; 496 NW2d 321 (1992). To determine whether there was premeditation or deliberation, the court may consider the prior relationship of the parties, the defendant's actions before the killing, the circumstances of the killing, and the defendant's conduct following the killing. *Id.*
>
> We find that evidence presented, viewed in the light most favorable to the prosecution, was sufficient to support the prosecution's case. A witness saw defendant with the victim just prior to the killing and observed him fleeing the scene immediately after the gunshots were heard. No other person was seen in the immediate area. This evidence was viewed together with the evidence that the victim was a key

> witness in an earlier dismissed murder charge against
> defendant, the evidence of defendant and the victim's
> involvement together in selling drugs was indicative of
> defendant's motive.

*Hubbard*, No. 159160 (Mich. Ct. App. Dec. 19, 1995).

The applicable rule or standard for reviewing sufficiency claims was set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Supreme Court held that in reviewing sufficiency claims, the relevant question is whether—after viewing all of the evidence in the light most favorable to the prosecution—*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 318-319.  The Supreme Court emphasized that *all of the evidence* is to be considered in the light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard was to be applied regardless of whether the evidence of guilt was direct or circumstantial.  Circumstantial evidence is entitled to equal weight as direct evidence, and the prosecution may meet its burden entirely through circumstantial evidence.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954).  "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient."  *People v.*

*McRunels*, 237 Mich. App. 168, 181 (1999).  Moreover, "[p]ieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case." *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011) (en banc).

Further, the prosecutor does not have an affirmative duty to rule out every hypothesis except that of guilt. *Jackson*, 443 U.S. at 326. And it is the province of the fact-finder—in Hubbard's case the state trial court judge—to weigh the probative value of the evidence and resolve any conflicts in testimony. *Jackson*, 443 U.S. at 318-319.  The result is that when "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume— even if it does not appear affirmatively in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  Federal habeas courts reviewing sufficiency claims are not to reweigh the evidence or re-determine the credibility of witnesses whose demeanor had been observed by the finder of fact. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  Indeed, the Supreme Court admonished and reversed the Ninth Circuit Court of Appeals for substituting its judgment for that of a

California jury.  See e.g., *Cavazos v. Smith*, 132 S. Ct. 2 (Oct. 31, 2011) (per curiam) (*Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.")

According to the Sixth Circuit, the *Jackson* standard is so demanding that a defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle. *Davis*, 658 F.3d at 534 (internal quotations and citations omitted).  In reviewing a sufficiency claim, deference is required at two levels: first, to the fact-finder's verdict as contemplated by *Jackson*, and second, to the state court's consideration of the fact-finder's verdict as dictated by AEDPA.  *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); see also *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  And the Sixth Circuit has described the standard for sufficiency claims as "exceedingly general." *Davis*, 658 F.3d at 535.

In denying Hubbard's claims, the Michigan Court of Appeals applied the correct rule so the question on federal habeas review is whether its application of *Jackson* was unreasonable.  It wasn't.  The Michigan Court of Appeals reasonably determined that there was

sufficient evidence to find that the prosecutor presented sufficient evidence to establish that Hubbard was guilty of first-degree murder. The prosecutor on direct appeal also correctly argued that there was more-than-sufficient evidence that Hubbard was guilty of first-degree murder:

> [T]here was sufficient circumstantial and direct evidence establishing Defendant's guilt. It is of no moment that Defendant does not believe the main witness, the trial court did believe the witness. Curtis[] Collins testified that he knew the Defendant, and saw him in a party store on January 17, 1992, with the deceased Rodnell Penn (TIII p. 44). After exiting the party store, the witness heard several gunshots, turned around in the direction of the shots, saw the deceased laying in a driveway, and saw the Defendant running through a field away from the scene (TIII pp. 44-45). Medical testimony revealed that the deceased died from multiple gunshot wounds. There were a total of five gunshots to the body of the deceased, two shots to the head and three shots to the back. One of the shots to the head was at the right temple and showed evidence of close range firing. The other shot to the head was in the area of the right ear and did not show evidence of close range firing. Two of the three shots to the Deceased's back also showed evidence of close range firing (TI pp. 11-14). There was evidence that the Defendant had a motive to kill the deceased because the witness was a potential witness against him in another homicide case which was dismissed because the deceased failed to appear for trial as a witness against the Defendant (TIII pp. 91-94). There was also testimony that the Defendant and the deceased sold drugs together. A police officer testified that when the Defendant was told that the deceased was dead, he had a faked look of shock. When

> arrested, Defendant also gave a false exculpatory statement
> to the police regarding the incident (TII pp. 61-69).

(12/2/93 Prosecutor's Br. on Appeal, 12-15, Mich. Ct. App. 159160.)  For

the more-detailed reasons set forth by the prosecutor on direct appeal,

and where the Michigan Court of Appeal's ruling is supported by the

record and not an unreasonable application of *Jackson*, habeas relief is

not warranted on Hubbard's sufficiency-of-the-evidence claim.

To the extent that Hubbard challenges the inferences that the

state trial court judge drew from the testimony at trial, it is the job of

the fact-finder at trial, not a federal habeas court, to resolve evidentiary

conflicts.  The trial judge's verdict was reasonable, and the evidence

viewed in the light most favorable to the prosecution established

Hubbard's guilt of first-degree murder.  Further, any claim that the

prosecutor's witnesses were less than credible or believable would not

warrant habeas relief.  Attacks on witness credibility are simply

challenges to the quality of the prosecution's evidence, and not to the

sufficiency of the evidence.  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th

Cir. 2002).  An assessment of the credibility of witnesses is generally

beyond the scope of federal habeas review of sufficiency of evidence

claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). Habeas relief is not warranted on Hubbard's insufficient-evidence claim.

## V.   Habeas relief is not warranted on Hubbard's claim that the trial court's inconsistent verdict violated his federal constitutional rights.

In his seventh claim, Hubbard asserts that the trial court's inconsistent verdict violated his federal constitutional rights.  Hubbard raised an inconsistent-verdict claim on direct appeal but presented it as an alleged violation of state law.  In other words, he failed to federalize his claim.  As such, his habeas claim alleging a federal constitutional violation appears unexhausted.  But because Hubbard would no longer have an available state court remedy by which to exhaust this claim— Hubbard already filed with the state trial court one motion for relief from judgment—the technically unexhausted claim is procedurally defaulted.  In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted.  *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)); see also *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (Where a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be

71

dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust.")  Hubbard has failed to establish good cause to excuse this default, and actual prejudice.  Nor can he show that failure to consider this claim would result in a fundamental miscarriage of justice.

But even if the claim was considered, habeas relief is not warranted.  The Michigan Court of Appeals denied relief on his inconsistent-verdict claim:

> Defendant also asserts that the court gave an inconsistent verdict.  The trial court noted that defendant was charged with felony firearm based on the possession of a handgun.  MCL 750.227(b); MSA 28.424(2).  Because he was not persuaded beyond a reasonable doubt that a handgun rather than a sawed-off shotgun was used in the shooting, the trial court acquitted defendant on this charge.  We find no reversible error in the trial court's failure to convict the defendant of felony firearm as charged, yet find him guilty of first-degree murder.

*Hubbard*, No. 159160 (Mich. Ct. App. Dec. 19, 1995).

Hubbard has not established that the state court's ruling on his claim is contrary to or an unreasonable application of clearly established Supreme Court law.  Rather, the Supreme Court has held that "[c]onsistency in the verdict is not necessary" and that "[e]ach count in an indictment is regarded as if it was a separate indictment."

*Dunn v. United States*, 284 U.S. 390, 393(1932); *United States v. Powell*, 469 U.S. 57, 65 (1984).  Further, the Sixth Circuit has held that inconsistency in verdicts is not a sufficient reason for reversal, regardless if a jury or judge is the trier of fact.  *United States v. Chilingirian*, 280 F.3d 704, 710-11 (6th Cir. 2002) (citing *Harris v. Rivera*, 454 U.S. 339, 345 (1981)).  Here, the state appellate court reasonably and properly found "no reversible error in the trial court's failure to convict the defendant of felony firearm as charged, yet find him guilty of first-degree murder."  Where Hubbard has failed to show that the state court's ruling was contrary or an unreasonable application of Supreme Court law, or that his federal constitutional rights were violated, habeas relief on Hubbard's seventh claim is not warranted.

## Conclusion

The Supreme Court has described habeas corpus as an "extraordinary" remedy. *Bousley v. U.S.*, 523 U.S. 614, 621 (1998). That extraordinary remedy is not warranted in this case.

At the outset, Hubbard's claims are barred by the applicable statute of limitations as detailed above.

Further, a number of Hubbard's claims are procedurally defaulted, and Hubbard has not shown cause and prejudice to excuse the default.  In addition, he has not shown failure to review the claims would result in a fundamental miscarriage of justice.  Accordingly, as detailed above, habeas review of his defaulted claims should be barred.

The state courts' rejection of Hubbard's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Hubbard was "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial.").  The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and

74

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.  The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court decisions. *Yarborough*, 541 U.S. at 664.  In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011).  Here, there was no "extreme malfunction." *Richter*, 131 S. Ct. at 786.  Consequently, habeas relief should be denied.

The State also asserts that Hubbard is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter.  *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Hubbard also has not demonstrated entitlement to discovery. "Habeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).  Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause."  R. Governing

2254 Cases in the U.S. Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)).  Habeas Rule 6(a). "Conclusory allegations are not enough to warrant discovery under Rule 6, rather, a petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974.  Hubbard has not met this burden.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability (COA) to proceed further if this Court denies the petition.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Slack*, 529 U.S. at 483-84.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

"The issuance of a COA must not be pro forma or a matter of course," and a habeas petitioner who seeks the issuance of a COA must show more than the absence of frivolity or the presence of good faith on his or her part in order to obtain a COA. *Miller-El*, 537 U.S. at 337-38. Finally, a habeas petitioner's conclusory assertion that jurists of reason would find his or her claims to be debatable is insufficient to warrant the issuance of a COA. *See Bagby v. Saffle*, 53 F. App'x 25, 28 (10th Cir. 2002) (stating that the petitioner's "mere conclusory assertions to the contrary" are not enough to satisfy the burden). Hubbard has failed to establish that a COA is warranted in this case.

## Relief

For the reasons stated above, the State respectfully asks this Court to dismiss the petition as untimely or, alternatively, to deny the petition because none of Hubbard's claims warrant habeas relief. The Court should also deny Hubbard any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks or may seek in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467

Dated: July 30, 2014
AG#2014-0074336-A/Hubbard,Carl/Answer

## Certificate of Service

I certify that on July 30, 2014, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> HONORABLE DAVID M. LAWSON
> MAGISTRATE JUDGE PAUL J. KOMIVES

and I certify that Christy Wendling-Richards has mailed by United States Postal Service the papers to the following non-ECF participant:

> CARL HUBBARD
> CARSON CITY CORRECTIONAL FACILITY
> 10274 BOYER ROAD
> CARSON CITY, MI  48811

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467